[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13246
_____

D.C. Docket No. 4:13-cr-00104-RH-CAS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLIFFORD VIRGILE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 11, 2015)

Before TJOFLAT, ANDERSON, and SENTELLE,* Circuit Judges.

_____

*       Honorable David Bryan Sentelle, United States Circuit Judge for the District of Columbia
Circuit, sitting by designation.

PER CURIAM:

We have had the benefit of oral argument in this case, and have carefully reviewed the briefs of the parties and the relevant parts of the record. Defendant raises two challenges on appeal, both of which relate to the district court's denial of his motion to suppress: (1) he argues that there was not reasonable suspicion to support the Terry[1] stop of defendant; and (2) even assuming there was reasonable suspicion to conduct a Terry stop, he argues that the seizure of defendant's keys exceeded the scope of a permissible protective frisk under Terry.

We conclude that there was more than enough evidence to constitute reasonable suspicion to justify the Terry stop (as will be obvious from our discussion below). We conclude that we need not address the second issue raised by defendant. We need not resolve whether the officer's seizure of defendant's keys exceeded the scope of a Terry stop, because we conclude that the officer had probable cause by the time he had seized the keys and asked defendant a few questions about them.

Before Officer Williams ever even approached and questioned defendant, he had ample evidence constituting probable cause to believe that Charles had committed a crime involving the withdrawal of $500 from the Wells Fargo ATM

---

[1]    Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968).

in the student union complex.  Law enforcement had received a  report that custodians had arrived early, at 6 am, at the virtually deserted student union complex and noticed suspicious activity on the part of two black males around an ATM.  As a result of that report, officers approached Charles, who fled.   After Charles was caught, and after <u>Miranda</u> warnings, Officer Williams questioned Charles, and determined that he had over $2900 in cash on his person, mostly in $20 bills which the officer inferred came from an ATM.  He also had on his person a debit card in the name of another person, about which Charles told the officer that it belonged to another person who asked him to get money for him.  During Officer Williams' interview of Charles, another officer retrieved a receipt reflecting that $500 cash had been drawn from the Wells Fargo ATM at the student union at 5:58 am that morning.  The receipt had been dropped as Charles fled, thus revealing that Charles had withdrawn $500 from that particular ATM using the card which was not in his own name.  During his interview with Charles, the officer also reasonably inferred that Charles had committed a crime because he repeatedly asked how much time he was going to get.

Thus, at the time Officer Williams approached defendant, he already had probable cause that Charles had committed a crime.  The officer had already reasonably inferred that Charles was not alone, because the custodians had reported that two persons were engaged in suspicious activity around the ATM at

3

the student union complex.  Also, Officer Williams had considerable indication that the other person with Charles was this defendant.  He matched the description of the second black male as revealed in the police report.  Although a black male with dreadlocks and a black hoodie might not have been a sufficient identification in other circumstances, at 6:00 am when the area was otherwise virtually deserted, the fact that defendant matched the description given in the police report was evidence of considerable force.   After reading defendant his Miranda rights, and after defendant agreed to speak with the officers, further information was revealed.  In the conversation with Officer Williams, defendant admitted that he knew Charles from Miami, and admitted that he had seen him briefly that very morning at the student union.  Thus, Officer Williams knew not only that defendant matched the description of the person indicated in the police report as having participated in suspicious activity with Charles, the officer also had defendant's own admission that he knew Charles and that he had seen him at the student union that very morning.  In light of the fact that virtually nobody else was at the student union at that hour of the morning, and in light of the fact that the police report indicated that a black male fitting the description of defendant and another black male – with respect to whom the officers already had probable cause to believe had committed a crime involving a $500 withdrawal from an ATM – were engaged in

4

suspicious activity around that ATM, we believe that the officers had probable cause to believe that the defendant was involved in the commission of that crime.

For the foregoing reasons, we believe that Officer Williams had probable cause to believe that the defendant had committed a crime, and thus was justified in seizing and retaining the key ring with the keys to the rental car. Thus, the judgment of the district court is

AFFIRMED.